**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2019 CA 1686

WILLIE DILLON

VERSUS

LOUISIANA DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONS

Judgment rendered: **AUG 0 6 2020**

* * * * *

On Appeal from the
Nineteenth Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
No. C688010, Sec. 22

The Honorable Timothy Kelley, Judge Presiding

* * * * *

Willie Dillon #305881                In Proper Person
David Wade Correctional Center
Homer, Louisiana


Jonathan R. Vining                   Attorney for Defendant/Appellee
Baton Rouge, Louisiana               Louisiana Department of Public
                                     Safety and Corrections


* * * * *

**BEFORE: McCLENDON, WELCH, AND HOLDRIDGE, JJ.**

**HOLDRIDGE, J.**

Petitioner, Willie Dillon, an inmate in the custody of the Department of Public Safety and Corrections (the Department), appeals a judgment of the district court dismissing his petition for judicial review of a disciplinary decision on the grounds that he failed to raise a "substantial right" violation. For the reasons that follow, we affirm.

## DISCUSSION

On June 26, 2019, while incarcerated at David Wade Correctional Center, Dillon was charged with violating Rule #5 (Aggravated Disobedience). The charges were based on an incident report in which Sgt. Johnathan Wood stated that, while making rounds on the N2D tier, he observed Dillon yelling about the TV by his cell. He disobeyed two direct verbal orders to stop yelling. Dillon only complied after being informed he would receive a Rule Violation Report.

Dillon was placed in administrative segregation pending an investigation and disciplinary hearing. A Disciplinary Board hearing was held on June 28, 2019. He was found guilty of aggravated disobedience and sentenced to twelve weeks loss of yard privileges.

After exhausting his administrative remedies, Dillon filed a petition for judicial review in the Nineteenth Judicial District Court. The matter was then referred to a commissioner for review pursuant to La. R.S. 15:1188.[1] The commissioner recommended that Dillon's claim be dismissed, with prejudice, for failure to set forth a "substantial right" violation that would authorize the court to intervene and reverse the Department's decision. Consequently, the commissioner

---

[1] The offices of commissioner of the Nineteenth Judicial District Court were created by La. R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners. La. R.S. 13:713(A). The district judge "may accept, reject, or modify in whole or in part the findings or recommendations made by the commissioner and also may receive further evidence or recommit the matter to the commissioner with instructions." La. R.S. 13:713(C)(5).

2

stated, the court had no authority to review the claim raised based on the allegations made. Dillon filed a traversal of that recommendation. On October 15, 2019, the district court signed a judgment affirming the Department's decision and dismissing, with prejudice, Dillon's petition for judicial review. This appeal by Dillon followed.

We find the commissioner's recommendation, which we adopt herein and attach as "Appendix A," provides a correct analysis of the applicable law regarding Dillon's claim. Accordingly, after a thorough *de novo* review of the record, we conclude that the district court properly dismissed Dillon's petition for judicial review. We issue this summary opinion in accordance with Uniform Rules-Louisiana Courts of Appeal, Rule 2-16.2A(2), (4), (5), and (10). The judgment of the district court is hereby affirmed. No costs are assessed in this pauper suit.

**AFFIRMED.**

## COMMISSIONER'S SCREENING RECOMMENDATION

Petitioner, an inmate in the custody of the Department of Public Safety and Corrections, filed this appeal of a prison disciplinary decision in DBA #DWCC-2019-111. Pursuant to [La.] R.S. 15:1178 and [La.] R.S. 15:1188, this Court is required to screen all suits by prisoners before service in order to determine whether the petition states a cause of action or cognizable claim for which relief may be available, and also to whether it is frivolous and/or malicious. This screening report is issued for the Court's *de novo* consideration and adjudication of the merits of the Petitioner's claim for relief.

## ANALYSIS OF THE FACTS AND LAW

The scope of this Court's review is limited by [La.] R.S. 15:1177(A)(5) & (9), which states, in pertinent part, as follows:

> "(5) The review shall be conducted by the Court without a jury and shall be confined to the record. The review shall be limited to the issues presented in the petition for review and the administrative remedy request filed at the agency level.

> \*\*\*\*\*\*\*\*\*\*

> (9) The court may reverse or modify the decision **only if substantial rights of the appellant have been prejudiced** because the administrative findings, inferences, conclusions or decisions are:

> a. In violation of constitutional or statutory provisions;

> b. In excess of the statutory authority of the Agency;

> c. Made upon unlawful procedure;

> [d]. Affected by other error of law;

> [e]. Arbitrary or capricious or characterized by an abuse of discretion or clearly unwarranted exercise of discretion; or

> f. Manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. (Emphasis added).

According to the administrative record, Petitioner was found guilty of violating Prison Disciplinary Rule #5 Aggravated Disobedience and received a penalty of twelve (12) weeks loss of yard privileges.[2] The record also shows that Petitioner had a hearing on the disciplinary matter and was able to appeal that decision to the Warden.[3] The penalty of twelve (12) weeks loss of yard privileges, as here, is a valid, authorized penalty for Schedule B Rule violations under the Department's Rules and Procedures.[4] However, Petitioner's disciplinary board decision was not appealable to the Department's Secretary because

> [t]he Secretary will only consider appeals from decision which resulted in the imposed or suspended sentences of one or more of the following penalties:
>
> 1) forfeiture of good time,
> 2) custody change from minimum to medium only if it involves transfer to another institution,
> 3) custody change to maximum,
> 4) failure to earn incentive wages, or
> 5) restitution.[5]

Since Petitioner's penalty "is not within the specified penalties" that warrant review, his appeal to the Secretary was rejected.[6] Therefore, Petitioner has not alleged a cause of action for judicial review. He has no statutory or constitutional right to particular recreational privileges.

Under the Supreme Court's holding in *Sandin v. Conner*, [d]iscipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law, in determining whether such

---

[2] See DWCC Appeal Decision, Case No. DWCC-2019-111, dated [August 7, 2019].

[3] *Id.*

[4] See LAC 22:I:34[1] et seq.

[5] See *supra* note 1 and Disciplinary Board Appeal No. DWCC-2019-111, decided August 19, 2019.

[6] See Disciplinary Board Appeal, Appeal No. DWCC-2019-111, decided August 19, 2019.

sanctions violate [a prisoner's][7] due process liberty interest.[8] The Petitioner was given a hearing and an appeal to the Warden. This procedure more than meets that required under the jurisprudence. And, absent factual allegations supporting "a substantial right violation," Petitioner fails to state a cause of action because he does not meet the threshold requirement that would permit this court to intervene in the authority of the prison administration to enforce discipline and security at the prison.[9]

> "In Louisiana, prison officials are accorded wide latitude in the administration of prison affairs. Only in extreme cases will courts interfere with the administration of prison regulations or disciplinary procedures."[10]

## DETERMINATION OF A SUBSTANTIAL RIGHT VIOLATION

As stated hereinabove in Subsection 9 of [La.] R.S. 15:1177(A), this Court may intervene and reverse and/or modify the decision of the Agency in this matter **only** if substantial rights of the Petitioner have been prejudiced. In this case, based upon the penalty imposed, no substantial right has, in fact, been violated, and therefore, this Court has no authority to overturn the Department's decision in this case.

For purposes of a Disciplinary Board Appeal, (following the Supreme Court's decision in *Sandin v. Conner*, infra), the jurisprudence holds that a

---

[7] We note that the brackets were added by the Commissioner and not this Court.

[8] 115 S.Ct. 2293, 2301 (1995).

[9] See [La.] R.S. 15:1177(A)(9) above; also *Sandin v. Conner*, 115 S.Ct. 2293 (1995); *Lay v. Porey*[,] 727 So[.]2d 592 ([La. App.] 1st Cir. 1998).

[10] *Watts v. Phelps*[,] 377 So[.]2d 1317, 1320 ([La. App.] 1st Cir. 19[79])[, writ denied, 380 So.2d 1210 (La. 1980).]; See also, *Sanchez v. Hunt*[,] 329 So[.]2d 691 (La. 1976); *Victorian v. Stalder*[,] 770 So[.]3d 3[8]2 ([La. App.] 1st Cir. 2000); *Lay v. Rachel-Major*[,] 761 So[.]2d 723 ([La. App.] 1st Cir. 2000).

substantial right would be limited to one in which the Petitioner has a "liberty" or due process interest.[11]

> "The due process clause does not protect every change in conditions of confinement which has a substantial adverse effect upon a prisoner [sic]."[12]

> "As long as the condition or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the due process clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."[13]

> "Whether any procedural protections are due depends on the extent to which an individual will be condemned to suffer 'grievous loss'."[14]

In the case of *Sandin v. Conner*, the Supreme Court sought to clarify the proper analysis to determine liberty interests and due process rights of a prisoner in a disciplinary proceeding, for which judicial intervention might apply.[15] The Court specifically discussed the circumstances under which a prisoner would be entitled to the protection of the due process clause in facing prison disciplinary charges. The *Sandin* court held that *no inmate has a constitutionally protected liberty interest in an ordinary disciplinary hearing unless he suffers some "atypical substantial hardship*, [sic]" such as a loss of good time or the involuntary administration of psychotropic drugs—which did not occur in this case.[16] The

---

[11] See *Sandin v. Conner*, 115 S.Ct. 2293 (1995).

[12] *Sandin v. Conn[e]r*, 115 S.Ct. 2293 (1995) at 2297, citing *Meachum v. Fano*, 96 S.Ct. 2532 [1976.]

[13] *Montanye v. Haymes*, 96 S.Ct. 254[7] (1976) at p. 2543; (see also, *Hewitt v. Helms*, 103 S.Ct. 864 (1983).

[14] *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972) at p. 2600.

[15] The Court stated that the "mechanical" liberty interest analysis suggested by Hewitt v. Helms, supra[], and following cases, had confused the criteria to determine a liberty interest, and resulted in encouraging inmates to comb the regulations for "mandatory language" while discouraging prison officials from publishing uniform rules and regulations for fear of "creating" a liberty interest in their procedures. (See *Sandin v. Conner*, supra.)

[16] Previous State case law based upon Federal jurisprudence had held that prisoners may have a protected liberty interest in not being confined to extended lockdown, based upon "mandatory language" in a prison regulation or rule. See, Wallace v. T[e]er, 527 So[.]2d 1061 (La.App. 1st

Courts stated that the type of liberty interest requiring some measure of due process by the State includes those interests in freedom from restraint that impose unusually difficult hardships on the inmate or a "dramatic departure from [sic] basic conditions" in relation to the ordinary incidence of prison life.

Specifically, even confinement to disciplinary segregation was held not to "present the type of atypical significant deprivation which a state might conceivably create a liberty interest in."[17] Consequently, this penalty does not rise to the level of atypical punishment. If the punishment affects only the custody status or classification of an inmate, and not the date of eventual release, (such as a loss of good-time would), and is not a "dramatic departure" from expected maximum-security prison life, **due process merely requires the prisoner to be given the opportunity to give his version of the incident.**[18] He need not be allowed to present evidence, cross-examine witnesses, etc.[19] In this case, the Petitioner was given a hearing wherein he could state his version of events and the opportunity to appeal that decision to the Warden. Therefore, his due process rights were satisfied.

Following the lead of the Supreme Court in *Wolff v. McDonnell*[,] 94 S.Ct. 2963 (1974) and *Sandin v. Conn[e]r*, supra, the Fifth Circuit noted in the case of *Madison v. Parker*, 104 F.3d. 765 (5th Cir. 1997), that no liberty right is created by a change in the quality of confinement as opposed to the quantity thereof. In the case of *Clark v. Rayb[u]rn*, [68 F.3d 474 (6th Cir. 1995),] the Sixth Circuit, in

---

Cir. 1988[)], citing *McCrae v. Hankins*, 720 F2d. 863 (5th Cir. 1983). However, the Supreme Court noted in *Sandin* that the prior due process analysis using the "mandatory language" criteria was improper and unworkable since *Hewitt*, and the Court sought to set out a bright line for future decisions regarding Disciplinary Board appeals.

[17] *Ibid. Sandin* at p. 2301.

[18] *Sandin v. Conner*, supra.

[19] *Sandin v. Conner, supra.*

applying the *Sandin* holding, found that an inmate had no constitutionally protected liberty interest in an ordinary disciplinary hearing absent an atypical, significant penalty, and therefore had no right to complain.

> "It is difficult to see that any other deprivation in the prison context short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional liberty status."[20]

> "Even assuming the lockdowns were punitive..., they do not 'present a dramatic departure from the basic conditions of [his] sentence."[21]

## SUMMARY

In this case, the penalty imposed was twelve (12) weeks loss of yard privileges. The Petitioner was afforded a hearing and an appeal of the ruling to the Warden. Considering the nature of the penalty, and the fact that it does not affect the length of the Petitioner's sentence or present any other drastic departure from expected prison life, the Petitioner fails to set forth a substantial right violation which would authorize this Court to intervene and reverse the Agency's decision.[22] Consequently, this Court has no authority to review the claims raised based on the allegations made. This suit must be dismissed because it is without a basis in law or fact. Based on my analysis herein, my formal recommendation follows.

## COMMISSIONER'S SCREENING RECOMMENDATION

Having considered the entire record and the applicable law, I find that the Petitioner fails to show that the decision of the disciplinary board was arbitrary, capricious, or manifestly erroneous in violation of any of his rights. Therefore, I recommend that the disciplinary decision be affirmed and that this appeal be dismissed with prejudice at Petitioner's costs.

---

[20] *Orellana v. Kyle*[,] 65 F[.]3d 29, 31-32 ([5th Cir.] 1995), [cert. denied, 116 S.Ct. 736 (1996)].

[21] *Ricks v. Boswell*[,] 149 F[.]3d 1191 ([10th Cir.] 1998).

[22] See [La.] R.S. 15:1177A(9).

Respectfully recommended, this the 24th day of September 2019, in Baton Rouge, Louisiana.